DECISION
Before this Court is an appeal from an order of the Department of Labor and Training (DLT), filed by Starlight Communications Holding, Inc. (Starlight). Starlight contends that DLT erroneously imposed a fine of $500 for each of fourteen alleged violations of G.L. 1956 § 5-70-2, entitled the Telecommunications Act (the Act). In support of its appeal, Starlight asserts that it did not engage in the installation of a telecommunications system in violation of the Act when it contracted with a licensed third party to install such a system. It also contends that DLT provided insufficient findings of fact, violated its due process rights, and failed to follow the Rules of Evidence. Jurisdiction is pursuant to Administrative Procedures Act G.L. 1956 § 42-35-15(g).
 I Facts and Travel
Starlight is a Rhode Island corporation that "owns and operates two way video distribution systems at various residential multifamily complexes in Rhode Island." Letter from Starlight to DLT dated January 20, 2003, at 2. Essentially, Starlight provides television cable services to approximately 2000 tenants in fourteen apartment complexes in Rhode Island. Transcript dated May 6, 2003, at 17 (Tr.I) andTranscript dated October 7, 2003, at 26 (Tr. III).[1]
The apartment buildings are managed by Picerne Properties (Picerne).Tr. III at 21. Picerne allegedly owns Starlight. Id. at 18. Starlight provides services only to Picerne-managed apartment complexes.Id. at 35. There are no written contracts between Starlight and Picerne, or between Starlight and the end-user tenants. Tr. II at 60. Starlight bills the tenants for its services in advance, and shuts off the service in the event that a tenant fails to pay. Id. at 63. Both Starlight and Picerne share some key executives, and various Picerne officers also own stock in Starlight. Id. II at 64 and Tr. III at 20. Thus, there is some common interest between the two entities. Tr. II at 64.
Some time in the year 2000, "Starlight contracted with Verizon Connected Solutions, Inc. (formerly known as Bell Atlantic Construction Services, Inc.) (Verizon), to install network powered broadband systems at fourteen apartment complexes in Rhode Island." Id. This involved trenching and the installation of cable. Tr. III at 29. Essentially, Verizon was contracted to "plow cable into the ground. . . ." Tr. I at 17. The fiber optic cable would connect to each building. Verizon possessed the requisite telecommunications licenses, pursuant to G.L. 1956 § 5-70-2. Tr. III at 5. A licensed contractor employed by Starlight then would hook up the cable to the existing internal wiring.Tr. I at 18 and Tr. II at 35.
On January 20, 2003, Starlight filed a complaint with DLT. Letter fromStarlight to DLT dated January 20, 2003, at 2. It alleged that Verizon had subcontracted the design and installation work to an unlicensed corporation called Plan B Communications LLC. (Plan B). Id. It further alleged that Plan B then "sub-sub contracted" the work to DMA Communications Construction Corporation (DMA), another unlicensed corporation. Id.[2] According to Starlight, Plan B and DMA did not possess the requisite telecommunications permits, and performed substandard work in violation of local building codes and the National Electrical Code. Id. at 3.
On April 16, 2003, DLT's Division of Professional Regulation (the Board) informed Starlight that it would be conducting a hearing on May 6, 2003, to determine whether Starlight had violated § 5-70-2.[3] At the subsequent hearing, counsel for Starlight stated that "Starlight is a distribution company" that "falls within a statutory exemption under the Federal Communications Act called private cable systems."Tr. I at 14. Accordingly, he maintained, Starlight is not required to have cable television certificates, and is not regulated by the Rhode Island Public Utilities Commission. Id. at 14-15 and Tr. III at 34.
Counsel representing Verizon in the civil lawsuit between Verizon and Starlight, testified concerning his understanding of how Starlight operated its business affairs. Tr. III at 20. Mr. Robert J. Gaj testified on behalf of the Board. He testified that he issued a violation against Starlight on the basis of the January 20, 2003 letter from Starlight to DLT. Tr. III at 54. Thus, essentially, he testified that Starlight had accused itself of violating the statute when it wrote the letter to DLT, and he appears to have treated that alleged self-accusation as de facto proof of Starlight's wrongdoing.Id.
At the conclusion of the hearing, Board Member Paul A. Feeney made a motion to find Starlight had contracted with Verizon for telecommunications work in violation of § 5-70-2, and that it should be fined $500 for each of the fourteen violations. Tr. III at 6-63. The motion carried by a vote of four to three. Id. at 63. On November 21, 2003, the Board submitted its recommendation to the Director of DLT.See Board's Recommendation. On the same day, the Director of DLT accepted the Board's Recommendation and ordered Starlight to pay $7000 to the General Treasurer. See Director's Order dated November 21, 2003. The Director further informed Starlight that it could appeal the order within thirty days. See id. Starlight timely appealed the order to this Court.
 II Standard of Review
The Administrative Procedures Act provides this Court with appellate review jurisdiction over DLT orders. Sec. 42-35-15(g). It provides:
 "[t]he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, interferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." Id.
When reviewing a decision under the Administrative Procedures Act, this Court may not substitute its judgment for that of the agency on questions of fact. Johnston Ambulatory Surgical Ass'n, Inc. v.Nolan, 755 A.2d 799, 805 (R.I. 2000). "The court is limited to an examination of the certified record to determine if there is any legally competent evidence therein to support the agency's decision."Barrington Sch. Comm. v. Rhode Island State Labor Relations Bd.,608 A.2d 1126, 1138 (R.I. 1992). Furthermore, "[l]egally competent evidence is indicated by the presence of `some' or `any' evidence supporting the agency's findings." Rhode Island Pub. Telecommunications Auth. v. RhodeIsland State Labor Relations Bd., 650 A.2d 479, 485 (R.I. 1994).
An agency's decision "can be vacated if it is clearly erroneous in view of the reliable, probative, and substantial evidence contained in the whole record." Costa v. Registrar of Motor Vehicles, 543 A.2d 1307,1309 (R.I. 1988). Furthermore, reviewing Courts should uphold the decision as long as the administrators have acted within their authority to make such decisions. Goncalves v. NMU Pension Trust, 818 A.2d 678,683 (R.I. 2003) (citing Doyle v. Paul Revere Life Ins. Co.,144 F.3d 181, 184 (1st Cir. 1998)); see also, Coleman v.Metropolitan Life Ins. Co., 919 F.Supp. 573, 580 (D.R.I. 1996).
 III Analysis
Starlight raises numerous issues on appeal. It maintains that the Board violated § 42-35-10 and § 42-35-12 by failing to follow the rules of evidence, and by failing to include separate findings of fact and conclusions of law. Starlight further contends that it did not "engage in" the installation of a "telecommunications system" in violation of § 5-70-2, because the statute permits it to contract with a third party to install such a system. Next, it maintains that as a "self-provider," it is exempt from the requirements of the statute. Starlight further asserts that it was not afforded an opportunity to appeal the order, as provided by § 5-70-22(b). It next avers that the order violates the Supremacy Clause of the United States Constitution and47 U.S.C. § 522(7)(B), because it discriminates in favor of "franchised" cable companies. Finally, Starlight contends that it was denied due process because DLT levied a criminal penalty without prior notice and in excess of the amount permitted by § 5-70-6(b).[4]
 A. The Administrative Procedures Act
Starlight maintains that both the Board and the Director failed to make separate findings of fact and conclusions of law in violation of § 42-35-12. It further contends that the Board failed to follow the rules of evidence during the hearing in violation of § 42-35-10.
Section 42-35-12 provides in pertinent part:
 "Any final order adverse to a party in a contested case shall be in writing or stated in the record. Any final order shall include findings of fact and conclusions of law, separately stated. Findings of fact, if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings."
When acting in a quasi-judicial capacity, an administrative board "must set forth in its decision findings of fact and reasons for the actions taken." JCM, LLC v. Town of Cumberland Zoning Bd. of Review,889 A.2d 169, 176 (R.I. 2005) (quoting Kaveny v. Cumberland Zoning Board ofReview, 875 A.2d 1, 4-5 (R.I. 2005)); see also Block Island Power Co. v.Public Utilities Com'n, 505 A.2d 652, 654 (R.I. 1986) ("If the commission, however, fails to provide sufficient findings and evidence upon which it has based its decision, [the court] shall not speculate thereon or search the record for supporting evidence or reasons, nor shall [it] decide what is proven.")
It is well settled that "[a] satisfactory factual record is not an empty requirement. Detailed and informed findings of fact are a precondition to meaningful administrative or judicial review." JCM,LLC, 889 A.2d at 176. Moreover, "factual findings cannot be merely `conclusional, and the application of the legal principles must be something more than the recital of a litany.'" Id. at 176-77 (quotingKaveny, 875 A.2d at 8). In situations where there is an "absence of sufficient findings of fact and conclusions of law, `the [C]ourt will not search the record for supportive evidence or decide for itself what is proper in the circumstances.'" Id.
In its recommendation, the Board simply removed the phrase "It is alleged that:" from the April 16, 2003 notice it sent to Starlight, and then restated the allegations as "findings of fact."[5] Compareinfra note 3, with infra note 5. The Board then recommended that the Director levy "a fine of $500 for each of fourteen violations. . . ." On the same day that the Board issued its recommendation, the Director issued his order. In it, he stated "that upon review of the findings of fact of the Board, and upon due consideration thereof, a fine in the amount of five hundred dollars ($500) for each of fourteen (14) violations . . . has been levied." Director's Order.
This Court finds that the findings and conclusions in this case were legally insufficient and do not enable this Court to conduct an adequate review. Consequently, the Board's order is remanded for further proceedings consistent with this decision. See Kaveny, 875 A.2d at 9. Furthermore,
 "[o]n remand, the board should take care that its findings of fact are clearly set forth in its decision, referring to the evidence presented, and that its conclusions of law are properly supported by the findings of fact. The board shall confine its review to the existing facts and applicable law at the time of its initial decision. The board shall render its decision as expeditiously as possible and, in no event, beyond ninety days after the entry of this [decision]." Id.
 B. Opportunity to Appeal
Starlight additionally asserts that it was not afforded an opportunity to appeal the Board's recommendation to the Director, as provided by § 5-70-22(b). It contends that as a result, the Director's order was null and void.
It is well established that "[d]ue process requires that a party be given an opportunity to be heard "at a meaningful time and in a meaningful manner." State v. Oliveira, 774 A.2d 893, 923 (R.I. 2001) (internal quotations omitted). Furthermore, "it is the opportunity to exercise a right and not the actual implementation of that right that constitutes due process." Id. Additionally, "the right to be heard `is withoutmeaning unless such notice of the pendency of a hearing or proceeding is adequate in the circumstances to safeguard the right.'"Id. (quoting Cugini v. Chiaradio, 96 R.I. 120, 125, 189 A.2d 798, 801
(1963)).
Section 5-70-22(b) provides:
 "A copy of the order shall be immediately served upon the licensee personally or by registered or certified mail. The order of the board shall be final unless the licensee so charged or complainant shall within twenty (20) days after receipt of the order file with the director of labor and training an appeal. The appeal will be determined by the director or his or her designee. The director may accept or reject, in whole or in part, the recommended order of the board. The order of the director shall be final, subject to review by the courts under the Administrative Procedures Act, chapter 35 of title 42, and a copy of the order shall be immediately served upon the person, firm or corporation assessed."
This section provides for intermediary review by the Director. Thus, upon receipt of a recommended order from the Board, the Director must wait twenty days to allow an aggrieved party to appeal the recommendation.
In the present case, no such review was afforded because the Director issued his order on the same day that he received the Board's recommended order. By not allowing twenty days to pass before entering his order, the Director denied Starlight its due process. However, as this Court is vacating the order and recommendation and remanding them for detailed findings of fact and conclusions of law, the denial of due process did not substantially prejudice the rights of Starlight, because Starlight will have the opportunity to appeal to the Director once the Board issues its detailed recommendation. In view of the fact that this Court is remanding the case back to DLT for detailed findings of fact and conclusions of law, this Court need not address Starlight's other appellate issue.
 IV Conclusion
This Court finds that DLT's order was in violation of statutory and regulatory provisions, was in excess of the authority granted to DLT, and was arbitrary and capricious. The order also was affected by error of law and was characterized by an abuse of discretion. Substantial rights of the Appellant have been prejudiced. Accordingly, this Court vacates DLT's order and remands it for further proceedings consistent with this decision. This Court retains jurisdiction over the matter.
Counsel shall submit an appropriate order consistent with this decision.
[1] The hearing was conducted on three dates: May 6, 2003 (Tr.I); June 3, 2003 (Tr. II); and, October 7, 2003 (Tr. III).
[2] Apparently, Starlight found out about the subcontracts during the course of its discovery in a civil litigation lawsuit that it filed against Verizon.
[3] Specifically, the letter stated:
 "It is alleged that: Starlight Communications Holdings, Inc. (Starlight) contracted for telecommunications work at various residential multi-family complexes in Rhode Island without possessing a Rhode Island Telecommunications Systems Contractor license per letter dated January 20, 2003 from Michael Derderian to the Director of Labor Training. This is a violation of RIGL 5-70-2 `Practices Prohibited — Unlicensed Telecommunication Contractor.'"
[4] While § 5-70-6 provides for criminal penalties, the penalties in this case were levied in accordance with § 5-70-22, which allows for the imposition of administrative penalties. Consequently, Starlight's due process rights were not violated. Furthermore, the fines were levied for fourteen separate and distinct offenses, thus, these fines did not violate § 5-70-22(a), which provides in pertinent part:
 "The director may assess an administrative penalty on any . . . corporation for any violation of the provisions of this chapter, after notice and hearing, before and upon the recommendation of the board of examination of telecommunication system contractors, technicians and installers in the amount of not more than five hundred dollars ($500) for the first offense and not less than five hundred dollars ($500) nor more than one thousand dollars ($1000) for each subsequent offense" Sec. 5-70-22(a).
Consequently, this allegation of error is without merit.
[5] The recommendation contained the following language:
 "Upon proper notice and hearing thereon, the uncontradicted testimony of the investigator, Robert J. Gaj and in consideration thereof, the following findings of fact are made: Starlight Communications Holdings, Inc. (Starlight) contracted for telecommunications work at various residential multi-family complexes in Rhode Island without possessing a Rhode Island Telecommunications Systems Contractor license per letter dated January 20, 2003 from Michael Derderian to the Director of Labor Training. This is a violation of RIGL 5-70-2 `Practices Prohibited — Unlicensed Telecommunication Contractor.'"